UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATINA COLBERT, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 13-531 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| Defendants. | ) |

**OPINION**

Katina Colbert is an intellectually disabled woman who is unable to care for herself. While living in a group home managed by Total Care Services, Inc., a contractor for the District of Columbia, Katina Colbert became pregnant and gave birth to a baby girl with severe medical problems. The infant, TC, spent most of her short life in the hospital and died when she was just over a year old. Katina Colbert's mother, Jacqueline Colbert, sues the District and its contractor, alleging constitutional violations and various torts arising from Katina Colbert's pregnancy and TC's death. Kelvin Martinez, a man who lived in the same group home as Katina Colbert, asserts that he had unprotected sexual contact with Katina Colbert and that he is the father of TC. Mr. Martinez, through his guardian and mother, Maxima Krahling, moves to intervene in this suit. Plaintiffs and Defendants oppose intervention. As explained below, the motion to intervene will be denied.

**I. FACTS**

Jacqueline Colbert, mother of Katina Colbert and grandmother of TC, sues individually, as next friend of Katina Colbert and personal representative of the Estate of TC. The Amended Complaint names the District of Columbia and its contractor, Total Care Services,

1

Inc. (Total Care) as Defendants. Ms. Colbert alleges that in 2005 Katina Colbert was diagnosed with moderate to profound retardation, with the communication skills of a five-year-old and overall age equivalency of a ten-year-old. Am. Compl. [Dkt. 29] ¶ 9. In the fall of 2008, Katina Colbert was hospitalized and underwent a psychological assessment, whereby she was diagnosed "in the severe range of retardation" and was "found to be [at] risk of exploitation by others as evidenced by her past record of rape and sexual abuse." *Id.* ¶ 10. After her hospitalization, she began residing in a group home that was operated by Total Care, under contract with the District. *Id.* ¶ 12. Total Care and the District allegedly knew of Katina Colbert's limited abilities, vulnerabilities, diagnoses, and need for twenty-four hour supervision, and they allegedly knew of her fertility and her past and current sexual activity. *Id.* ¶¶ 13-14. The Amended Complaint further alleges that Defendants "facilitated and encouraged" Katina Colbert to have "unprotected, nonconsensual sexual intercourse with various men for extended periods of time in 2010." *Id.* ¶ 17. Total Care and the District allegedly knew of "specific findings that [Katina Colbert] was unable to care for herself or make life decisions for herself" and "failed to take necessary steps to protect Katina Colbert from foreseeable harm." *Id.* ¶ 18. Katina Colbert became pregnant and prematurely delivered TC, a baby girl, on April 3, 2011. *Id.* ¶ 20. Katina Colbert allegedly was provided "little to no prenatal care during most of her pregnancy" and "was not taken to the hospital promptly when it was clear she was in labor." *Id.* ¶ 19.

Because Katina Colbert was unable to care for her child, Jacqueline Colbert was awarded joint legal custody of TC, shared with Katina Colbert, and she was awarded sole physical custody of TC. *Id.* ¶¶ 3, 5, 21. TC was born with significant health problems requiring multiple surgeries and necessitating extended hospitalization; she died from medical complications on April 18, 2012, shortly after her first birthday. *Id.* ¶ 22.

The Amended Complaint contains fifteen Counts, asserted against both Defendants, unless otherwise noted:

> Count I—Negligence;
>
> Count II—Wrongful Birth;
>
> Count III—Breach of Fiduciary Duty;
>
> Count IV—Negligent Infliction of Emotional Distress;
>
> Count V— Intentional Infliction of Emotional Distress;
>
> Count VI—Wrongful Death;
>
> Count VII—Survival Act, D.C. Code §§ 12-101, *et seq.*;
>
> Count VIII—Violation of D.C. Code § 44-504(a)(3) & (4) (against Total Care);
>
> Count IX—Violation of D.C. Code §§ 7-1301.02, *et seq.* & 7-1305.14;
>
> Count X—Violation of D.C. Code §§ 7-1301.02, *et seq.* & 7-1305.13 (against the District);
>
> Count XI—Violation of Due Process and Equal Protection under the Fifth Amendment pursuant to 42 U.S.C. § 1983 (against the District);[1]
>
> Count XII—Sex Discrimination and Harassment in Violation of Title IX, 20 U.S.C. § 1681;
>
> Count XIII—Violation of the Rehabilitation Act, 29 U.S.C. §§ 701, *et seq.*;
>
> Count XIV—Violation of the Consumer Protection Procedures Act, D.C. Code §§ 28-2901, *et seq.* (against Total Care)
>
> Count XV—Punitive Damages (against Total Care).

*Id.* ¶¶ 25-171.

---

[1] Because Count XI alleges a violation of the Fifth Amendment pursuant to 42 U.S.C. § 1983, the Court has federal question jurisdiction under 28 U.S.C. § 1331.

Maxima Krahling, mother and guardian of Kelvin Martinez, seeks to intervene as a plaintiff in this case in order to assert Mr. Martinez's rights as the putative father of TC. *See* Mot. to Intervene [Dkt. 16]; Proposed Intervenor Reply [Dkt. 21]. Ms. Krahling alleges that her son is intellectually disabled, and he lived in the Total Care group home during the same time that Katina Colbert lived there. *Id*., Ex. 1 (Proposed Intervenor Complaint) [Dkt. 16-1] ¶¶ 3, 8, 12. She also alleges that Katina Colbert and Mr. Martinez were "allowed . . . and encouraged to have unprotected, nonconsensual sexual intercourse for extended periods of time from on or about 2008 through 2010," and that as a result, Katina Colbert became pregnant and delivered TC. *Id*. ¶ 12. Ms. Krahling seeks to file a complaint alleging negligence, negligent hiring and retention against Total Care, as well as wrongful birth, breach of fiduciary duty, negligent infliction of emotional distress, intentional infliction of emotional distress, wrongful death, and a claim for under the Survival Act against Total Care and the District. *Id*. ¶¶ 18-50. All parties oppose. DC Opp'n [Dkt. 17]; Pl. Opp'n [Dkt. 19]; Total Care Opp'n [Dkt. 20].

### III. ANALYSIS

#### A. Intervention as of Right

An applicant may intervene as of right when the applicant (1) makes a timely motion; (2) has an interest relating to the property or transaction that is the subject of the action; (3) is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) where the applicant's interests are not adequately represented by the existing parties. Fed. R. Civ. P. 24(a); *see also Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 6 (D.D.C. 2007).

Ms. Krahling, as guardian for Mr. Martinez, does not have a right to intervene in this case because she does not have an interest in the subject of this litigation. While she asserts

4

that Mr. Martinez "has been identified as the putative father and an heir to T.C. in the Estate of T.C.," *see* Mot. to Intervene at 6, she cites no support for that proposition. Mr. Martinez's paternity has not been established. A putative father has no legal interest in the estate of a child born out of wedlock until parenthood has been established. *See* D.C. Code § 19-316. Under D.C. law, a father-child relationship is established by an adjudication of a man's parentage, consent to the use of artificial insemination, or an unrebutted presumption of parentage. *Id*. § 16-909(a); *see also id*. § 16-908 ("A child is the legitimate child of any parent under which a parent-child relationship has been established pursuant to § 16-909 . . . .") Section 16-909(a) states that a rebuttable presumption of parentage can be established if the putative father and mother of the child were married or had attempted to be married at the time of conception or birth, if the putative father and the mother had married or attempted to marry after the child's birth, or if the putative father has acknowledged paternity in writing. *Id*.

Here, there is no allegation that Katina Colbert and Mr. Martinez were ever married or attempted to marry. Further, the record does not contain any written statement from Mr. Martinez acknowledging paternity. In fact, due to his incapacity, it appears he is not able to do so. Instead, Ms. Krahling asserts that in the custody case regarding TC, *see Colbert v. Colbert*, 2011 DRB 1427 (D.C. Superior Ct.), Katina Colbert and her mother identified Mr. Martinez as the father and Mr. Martinez was awarded visitation rights. *See* Mot. to Intervene at 5. The record reveals that on January 10, 2012, the Superior Court granted joint legal custody of TC to Ms. Colbert and her daughter, Katina, and granted sole physical custody to Ms. Colbert. *Id*., Ex. 2 (Order Granting Custody). The Order did not establish paternity, but did allow Mr. Martinez visitation "at the discretion of [Ms. Colbert] and at [her] residence with reasonable

5

notice" from Mr. Martinez. *Id*. at 1. Contrary to Ms. Krahling's allegation, Katina and Jacqueline Colbert dispute Mr. Martinez's claim of parentage. *See* Pl. Opp'n at 1.

In the custody case, the D.C. Superior Court ordered Mr. Martinez to take a paternity test. *See* Pl. Opp'n, Ex. 1 (Sept. 28, 2011 Order Requiring Paternity Test). Mr. Martinez is indigent and has been unable to find a public source to pay for a paternity test. Proposed Intervenor Reply at 5. Over two years have passed since the Superior Court ordered a paternity test and Mr. Martinez still has not taken one. As a result, Mr. Martinez has not established paternity.

Ms. Krahling's asserted interest in the present litigation is as the guardian of Mr. Martinez, the alleged father of TC. Because she has not demonstrated a legal interest in this suit, Ms. Krahling's motion to intervene as of right will be denied.

### B. Permissive Intervention

A court, in its discretion, also may permit intervention where the applicant (1) makes a timely motion; (2) has a claim or defense; and (3) that claim or defense shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b); *see also EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). In addition to those three elements set out in Rule 24(b), courts also require that there be an "independent ground for subject matter jurisdiction." *EEOC*, 146 F.3d at 1046.

There is no independent ground for subject matter jurisdiction over Ms. Krahling's Proposed Intervenor Complaint, which alleges only claims under D.C. law: negligence, negligent hiring and retention, wrongful birth, breach of fiduciary duty, negligent infliction of emotional distress, intentional infliction of emotional distress, wrongful death, and a claim under the Survival Act. Ms. Krahling erroneously contends that diversity jurisdiction

6

applies to the Proposed Intervenor Complaint. Diversity jurisdiction applies to suits between citizens of different states where the amount in controversy exceeds the sum of $75,000. *See* 28 U.S.C. § 1332(a). However, diversity jurisdiction does not apply to the District of Columbia; like a State, the District is not a "citizen" of itself and therefore cannot be a "citizen" of a State different from Maryland. *Barwood, Inc. v. District of Columbia*, 202 F.3d 290, 292 (D.C. Cir. 2000); *Long v. District of Columbia*, 820 F.2d 409, 413-14 (D.C. Cir. 1987).

Even if the District of Columbia were not a party, diversity jurisdiction would be lacking because there are litigants from the same state on opposing sides. *See Prakash v. Am. Univ.*, 727 F.2d 1174, 1178 n.25 (D.C. Cir. 1984). Ms. Krahling seeks to sue as guardian for Mr. Martinez, who lives in the District of Columbia. The legal representative of "an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent." 28 U.S.C. § 1332(c)(2). Since Mr. Martinez and Total Care are both residents of the District, *see* Proposed Intervenor Compl. ¶¶ 3, 7, there is no diversity of citizenship in this matter.

Ms. Krahling further argues that she should be permitted to intervene here in order to "streamline" litigation brought against the District and Total Care. *See* Mot. to Intervene at 7. As guardian of Mr. Martinez, she previously filed suit in D.C. Superior Court against the District and Total Care, alleging some of the same causes of action she seeks to assert here: wrongful birth, wrongful death, and a claim under the Survivor Act. *See Krahling As Guardian of K.M. v. District of Columbia*, 2012 CA 002866 B (D.C. Superior Ct. filed Mar. 30, 2012). Even if Ms. Krahling met the criteria for intervention, it cannot be said that allowing her to proceed here would serve the interest of efficiency. Ms. Krahling's case in Superior Court is in an advanced stage, as discovery is closed and the case is in mediation. *See id.*; *see also* Pls. Opp'n at 2.

7

## III.  CONCLUSION

For the reasons set forth above, Ms. Krahling's motion to intervene as plaintiff [Dkt. 16] will be denied.  A memorializing Order accompanies this Opinion.


Date:  April 29, 2014                                   /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge