**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **KATINA COLBERT,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 13-531 (RMC)** |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## OPINION

Plaintiff Jacqueline Colbert brought this suit in her individual capacity, as next friend of her intellectually disabled adult daughter Katina Colbert (K.C.), and as personal representative of the Estate of T.C., K.C.'s deceased infant child. While she allegedly is unable to consent to sexual activity, K.C. became pregnant while residing in a group home for disabled adults. The group home was operated by Total Care Services, under contract with the District of Columbia. With little or no prenatal care, K.C. gave birth to a daughter, T.C. T.C. had significant medical problems and died when she was just over a year old. Based on an alleged violation of K.C.'s constitutional rights as well as numerous other grounds, Jacqueline Colbert seeks damages from Total Care and the District of Columbia.

On January 12, 2015, the Court dismissed, *inter alia*, Ms. Colbert's claim under the Rehabilitation Act, 29 U.S.C. § 794(a), for failure to state a claim. Ms. Colbert now moves for reconsideration and reinstatement of the Rehabilitation Act claim. As explained below, the motion for reconsideration will be denied.

# I. FACTS

In September 2008, K.C. was 31 years old and living in an emergency shelter for the homeless in the District of Columbia.  Am. Compl. [Dkt. 29] ¶ 87.  She had three small children who were in the custody of D.C. Child and Family Services.  *Id*.  For reasons that are unexplained, K.C. was hospitalized and referred for a psychological assessment.  *Id*.  Dr. Tonya Lockwood, a licensed psychologist, conducted the assessment.  Dr. Lockwood determined that K.C. had an IQ of 53; that she functioned "within the moderate range of mental retardation cognitively and adaptively;"[1] that she needed "medical and psychiatric stabilization;" that she needed to be referred to a neurologist to "rule out . . . dementia;" that she suffered from "symptoms of Post Traumatic Stress Disorder;" and that she had "symptoms of depression as well as grief related to the loss of her children and her own mortality."  Surreply [Dkt. 51], Ex. 2 (Lockwood Report) at 1, 8.[2]  Dr. Lockwood determined that K.C. was "unable to make independent decisions with regard[ ] to her finances, medical treatment, housing, habilitation, and life planning," and recommended "emergency residential placement in a community residential facility with on-site medical support as well as 24-hour supervision."  *Id.* at 8.  Soon thereafter, K.C. moved into a group home operated by Total Care, under contract with the District.  It is unclear whether K.C. was voluntarily or involuntarily committed to the custody of the District of Columbia.

Due to K.C.'s "retardation and low developmental age," Ms. Colbert alleges that K.C. was and is incapable of consenting to sexual activity.  *Id.* ¶ 11.  Even so, K.C. became

---

[1] Despite Dr. Lockwood's finding that K.C. was "moderately" retarded, Ms. Colbert characterizes K.C.'s level of mental disability variously as "moderate," "profound," and "severe."  *See* Am. Compl. ¶¶ 9-10.

[2] Plaintiff filed only pages 1, 8 and 9 of what appears to be a nine page report.

pregnant and delivered T.C. on April 3, 2011.  K.C. and Ms. Colbert shared joint legal custody of

T.C., and Ms. Colbert was awarded sole physical custody.[3]  *Id.* ¶¶ 3, 5, 21.  T.C. was born with

medical conditions that required surgery, hospitalization, and medical care; T.C. died on April

18, 2012.  *Id.* ¶¶ 17, 54.

Ms. Colbert, for herself, on behalf of K.C., and on behalf of the Estate of T.C.,

filed a fifteen count Amended Complaint.  The Counts are asserted against both the District of

Columbia and Total Care, unless otherwise noted:

Count I—Negligence;

Count II—Wrongful Birth;

Count III—Breach of Fiduciary Duty arising from special relationship;

Count IV—Negligent Infliction of Emotional Distress;

Count V— Intentional Infliction of Emotional Distress;

Count VI—Wrongful Death;

Count VII—Survival Act;

Count VIII—Violation of D.C. Code § 44-504(a)(3) and (4) (negligence per se) (against Total Care);

Count IX—Violation of D.C. Code §§ 7-1301.02 *et seq*. and 7-1305.14 (right to care of persons with intellectual disabilities);

Count X—Violation of D.C. Code §§ 7-1301.02 *et seq*. and 7-1305.13 (right to adequate habilitation program) (against the District);

Count XI—Violation of the Fifth Amendment pursuant to 42 U.S.C. § 1983 (against the District);

_____

[3] Kelvin Martinez, an intellectually disabled man who lived in the same group home as K.C., claimed that he was T.C.'s father.  However, paternity was never established because Mr. Martinez is indigent and he was unable to find a public source to pay for a paternity test.  Reply [Dkt. 21] at 5.

Count XII—Violation of Title IX, 20 U.S.C. § 1681;

Count XIII—Violation of the Rehabilitation Act, 29 U.S.C. § 701;

Count XIV—Violation of the D.C. Consumer Protection Procedures Act, D.C. Code §§ 28-3901 *et seq*. (against Total Care); and

Count XV—Punitive Damages (against Total Care).

*See* Am. Compl. [Dkt. 29].

On Defendants' motions to dismiss or for summary judgment, the Court dismissed the following claims:

(1) those portions of Count XI that allege endangerment (*id*. ¶¶ 105-114), equal protection (*id*. ¶¶ 120-126), and deprivation of due process under an entitlement theory (*id*. ¶¶ 127-133);

(2) Count XII, alleging a violation of Title IX of the Education Amendments (*id*. ¶¶ 134-144); and

(3) Count XIII, alleging a violation of the Rehabilitation Act (*id*. ¶¶ 145-153).

*See* Op. [Dkt. 52]; Order [Dkt. 53].[4]  Ms. Colbert now moves for partial reconsideration and reinstatement of Count XIII.  *See* Mot. for Partial Recons. [Dkt. 57]; Reply [Dkt. 61]; Reply [Dkt. 62].  Defendants oppose.  *See* Total Care Opp'n [Dkt. 58] District Opp'n [Dkt. 60].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) governs the motion for reconsideration. Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at

---

[4] The Court also required the parties to meet and confer and file a joint proposed schedule for limited jurisdictional discovery regarding Jacqueline Colbert's sole remaining federal claim—the Fifth Amendment substantive due process claim against the District of Columbia based on the theories of special relationship and deliberate indifference.

any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  Relief under Rule 54(b) is available "as justice requires." *DL v. Dist. of Columbia*, 274 F.R.D. 320, 324 (D.D.C. 2011).  To determine "what justice requires" courts examine the relevant circumstances.  *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005).  Relevant circumstances include whether the court has "'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Ficken v. Golden*, 696 F. Supp. 2d 21, 35 (D.D.C. 2010) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)) (alterations in original).  A court's discretion under Rule 54(b) is "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington University*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).

## III. ANALYSIS
### A. Motion for Reconsideration

The Court dismissed Count XIII, holding that Ms. Colbert had failed to state a disparate treatment claim under the Rehabilitation Act because she did not allege that Total Care treated K.C. differently than able-bodied individuals.[5]  Ms. Colbert seeks reconsideration and

---

[5] The Court explained that the purpose of the Act is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied."  Op. [Dkt. 57] at 21 (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)).  Because Total Care's sole purpose is to provide housing and residential services to the disabled, Ms. Colbert did not and could not allege that Total Care (under contract with the District) treated K.C. differently than able-bodied individuals because Total Care did not provide services to the able-bodied. *Id.*

reinstatement of Count XIII because she intended to assert a claim for failure to accommodate, not a claim for disparate treatment, under the Act.

The Rehabilitation Act, also known as the Rehab Act, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).[6] To state a claim under the Act, a plaintiff must allege that:

> (1) she is disabled; (2) she is otherwise qualified, (3) she was excluded from, denied the benefit of, or subject to discrimination under a program or activity, and (4) the program or activity is carried out by a federal executive agency or with federal funds.

*Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008). A defendant may assert as an affirmative defense to liability that accommodating the plaintiff's disabilities would constitute an undue burden. *Id.* The Act does not "guarantee the handicapped equal results" from receipt of federally-funded services. *Alexander v. Choate*, 469 U.S. 287, 304 (1985). Instead, it requires that federally funded programs make "reasonable accommodations" to enable "meaningful access" to services. *Id.* at 301; *accord Wright v. Giuliani*, 230 F.3d 543, 548 (2d Cir. 2000).

In her motion for reconsideration, Ms. Colbert clarifies that she did not intend to allege disparate treatment under the Rehab Act, but meant to allege a claim for failure to accommodate under the Act. *See* Mot. for Partial Recons. [Dkt. 57] at 2-6. The Supreme Court defined the scope of an accommodation claim in *Southeastern Community College v. Davis*, 442 U.S. 397, 410 (1979). There, a hearing disabled student (Ms. Davis) sought admission to a

---

[6] The District and Total Care receive federal funding and thus they are covered by the Rehab Act. Am. Compl. ¶ 146

nursing school.  Because her inability to understand spoken speech was an obstacle to full participation in the clinical program and she would not be able to function safely as a registered nurse even with full time supervision, the college denied her admission.  *Id.* at 401-02.  Ms. Davis sued, arguing that the college should accommodate her disability by modifying the program so that her hearing impairment would not bar her from participation.  The Court held that the college was not required to admit Ms. Davis because the accommodations sought—such as full time personal supervision whenever Ms. Davis attended patients and the elimination of clinical classes—would have compromised the essential nature of the training program and that such a fundamental alteration in the nature of a program was more than the Rehab Act required. *Davis,* 442 U.S. at 409-10.

Any interpretation of the Rehab Act must be "responsive to two powerful but countervailing considerations—the need to give effect to the statutory objectives and the desire to keep [the Act] within manageable bounds."  *Alexander*, 469 U.S. at 299.  With this in mind, the *Davis* court "struck a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of [federally-funded programs] in preserving the integrity of their programs: while a [program] need not be required to make 'fundamental; or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones." *Alexander*, 469 U.S. at 301 (interpreting *Davis*).

In keeping with the scope of the Rehab Act, *Alexander* held that a recipient of federal funds does not have to alter the benefit provided to meet an individual's particular needs. In that case, the State of Tennessee reduced Medicaid benefits from twenty in-patient hospital days per year to fourteen.  Medicaid recipients with disabilities brought a class action against the State alleging that the reduction denied them "meaningful access" to Medicaid services.  *Id.* at

302.  The Supreme Court held that the Rehab Act does not require a State to alter the definition

of the benefit being offered because the disabled may have greater medical needs:

> To the extent respondents further suggest that their greater need for
> prolonged inpatient care means that, to provide meaningful access
> to Medicaid services, Tennessee must single out the handicapped for
> *more* than 14 days of coverage, the suggestion is simply unsound.
> At base, such a suggestion must rest on the notion that the benefit
> provided through state Medicaid programs is the amorphous
> objective of "adequate health care."  But Medicaid programs do not
> guarantee that each recipient will receive that level of health care
> precisely tailored to his or her particular needs.  Instead, the benefit
> provided through Medicaid is a particular package of health care
> services.

*Id.* at 302-03 (emphasis in original).

In *Modderno v. King*, 82 F.3d 1059 (D.C. Cir. 1996), the D.C. Circuit applied

*Alexander* to a claim of discrimination on the basis of a mental disability because the plaintiff's

health insurance provided less coverage for mental illnesses than for physical illnesses.  The

Circuit held that such limits on mental health care were not discriminatory because they were

neutrally applied, despite the possibility that those with mental illness may require more care.  *Id.*

at 1062.  "Perhaps mentally disabled individuals are more vulnerable to discrimination than the

physically disabled.  If so, then Congress might wish to enact a statute affording the mentally

disabled special protection.  But the Rehabilitation Act is simply not such a statute."  *Id.*  While

the Rehab Act requires reasonable accommodations to ensure access to existing programs, the

Act does not require that a recipient of federal funds provide additional or different substantive

benefits.  *Wright*, 230 F.3d at 548.  "The disabilities statutes[7] do not require that substantively

different services be provided to the disabled, no matter how great their need for the services

---

[7] The "disabilities statutes" referred to are the Rehab Act and the Americans with Disabilities
Act, 42 U.S.C. § 12131.

may be. They require only that covered entities make 'reasonable accommodations' to enable

'meaningful access' to such services as may be provided, whether such services are adequate or

not." *Id.*; *see also Lincoln Cercpac v. Health and Hospitals Corp.*, 147 F.3d 165, 168 (2d Cir.

1998) (Rehab Act claim brought by disabled children who were transferred from one

rehabilitation center to another with fewer services was properly dismissed; the Rehab Act does

not "guarantee any particular level of medical care for disabled persons" nor does it "assure

maintenance of service previously provided.").

> In support of her Rehab Act claim, Ms. Colbert asserts:
>
> 148.  Because of her mental disabilities, [K.C] was vulnerable to sexual assault and nonconsensual sex and pregnancy.
>
> 149. Defendants knew that in order for [K.C.] to enjoy the benefits and services of her residential program, she required accommodation for her disability through 24-hour supervision and adequate birth control.
>
> 150. *Defendants failed to reasonably accommodate [K.C.'s] disability, failed to provide adequate supervision and failed to provide adequate birth control.*  Defendants exacerbated the harm to [K.C.] by facilitating and encouraging her to have sexual conduct with residents, District contractors and other strangers.

Am. Compl. [Dkt. 29] ¶¶ 148-150 (emphasis added).[8]  The Amended Complaint does not allege

that K.C. was denied meaningful access to residential care services.  In fact, Ms. Colbert

concedes that K.C. resided at a Total Care facility and received a "range of services." *Id.* ¶¶ 3, 7,

12.  Instead, the Amended Complaint asserts that the services provided were not *adequate* to

---

[8] The Amended Complaint often repeats the allegations that Defendants failed to provide K.C. with birth control and 24 hour supervision.  *See* Am. Compl. ¶ 29(a) (Defendants failed to provide birth control); ¶ 29(b) (Defendants failed to provide 24-hour supervision; ¶ 58 (Defendants should have known that the failure to provide birth control and 24 hour supervision would cause severe emotional distress); ¶ 116 (Defendants failed to attend to K.C.'s needs by failing to provide birth control, 24-hour supervision, and protection from nonconsensual sex).

meet K.C.'s individualized needs for 24-hour supervision and birth control.  *See id.* ¶ 150.  But the Rehab Act does not guarantee that K.C. receive a level of care precisely tailored to her particular needs.  *See Alexander*, 469 U.S. at 302-03.  The Rehab Act requires reasonable accommodations to assure access to existing programs; it does not require that additional or different substantive benefits be provided.  *See Wright*, 230 F.3d at 548.  Ms. Colbert alleges no denial of service to K.C.  She argues that the services provided were deficient.  The deficiency in services related to K.C.'s individualized needs is not "the sort of harm the Rehabilitation Act was intended to redress."  *Modderno,* 82 F.3d at 1061.

In sum, Ms. Colbert failed to state a claim under the Rehabilitation Act.  She has not demonstrated that the Court patently misunderstood a party, made a decision outside the adversarial issues presented, or made an error of apprehension.  *See Ficken,* 696 F. Supp. 2d at 35 (quoting *Cobell,* 224 F.R.D. at 272).  Further, there has been no controlling or significant change in the law or facts.  *See id.*  Accordingly, Ms. Colbert's motion for reconsideration will be denied.

### B. Motion to Amend

As an alternative to reconsideration, Ms. Colbert seeks to amend the complaint.[9] *See* Mot. for Partial Recons. [Dkt. 57] at 8-9.  Leave to amend should be granted "when justice so requires."  Fed. R. Civ. P. 15(a).  However, denial of leave to amend based on futility is warranted if the proposed claim would not survive a motion to dismiss.  *Foman v Davis*, 371 U.S. 178, 181-82 (1962); *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  Ms. Colbert has utterly failed to show that justice requires amendment.  Her motion does not indicate what she

---

[9] Ms. Colbert already has filed three versions of the complaint.  *See* Compl. [Dkt.1]; Am. Compl. [Dkt. 27]; Am. Compl [Dkt. 29] (corrected amended complaint).

would allege that would save her Rehab Act claim, and she did not file a proposed second amended

complaint.  *See* LCvR 15.1 (a motion for leave to file an amended pleading "shall be accompanied

by an original of the proposed pleading as amended").  Accordingly, the motion to amend will be

denied.

### C. Count XI, Claim for Violation of K.C.'s Right to Due Process

In her motion for reconsideration Ms. Colbert emphasizes that she alleges a Fifth

Amendment due process claim under numerous theories, one of which is that Defendants

interfered with K.C.'s fundamental right to sexual reproductive health care, including birth

control.  *See* Mot. for Partial Recons. [Dkt. 57] at 9-10; Reply [Dkt. 62] at 4.  Ms. Colbert points

to Count XI of the Amended Complaint, which alleges: (1) Defendants violated K.C.'s Fifth

Amendment rights under numerous theories, including that the District has a policy that "there

were to be no restrictions or safeguards imposed by the District, any residential provider such as

Total Care, or any family member on any sexual activities of intellectually disabled individuals,

including [K.C.]" without regard to the individual's capacity to consent to sex, *see* Am. Compl.

¶ 96; and (2) the policy "deprived [K.C.] of her liberty interest in having health care decisions—

such as birth control—made pursuant to the Health Care Decisions Act, D.C. Code § 21-2210,

after a determination of her best interests," *see id.* ¶ 97.  The Court dismissed the theories of

endangerment (*id.* ¶¶ 105-114), equal protection (*id.* ¶¶ 120-126), and entitlement (*id.* ¶¶ 127-

133), but the other theories remain.  *See* Op. [Dkt. 52].  Further, even though Ms. Colbert has

asserted a violation of due process, the Court has determined that she has stated a constitutional

claim only if K.C. was involuntarily in the custody of the District:

> [T]he District had an affirmative constitutional duty of care *only if*
> K.C. was involuntarily in the custody of the District.  *See Estate of*
> *Phillips v. District of Columbia*, 455 F.3d 397, 406 (D.C. Cir. 2006)
> (quoting *DeShaney*, 489 U.S. at 200-02) ("'[W]hen the State by the

> affirmative exercise of its power so restrains an individual's liberty
> that it renders him unable to care for himself, and at the same time
> fails to provide for his basic human needs,' such as in the custodial
> context if the state restrains a person from acting on his own behalf,
> a 'special relationship' exists which gives rise to an affirmative duty
> to protect that person."). Again, discovery is needed to determine
> whether K.C. was voluntarily or involuntarily in the District's
> custody at the time she became pregnant and gave birth. If she was
> voluntarily in the District's custody, Ms. Colbert has failed to state
> a constitutional claim.

Op. [52] at 14 (emphasis in original); *see also id*. at 9-13. The Court ordered the parties to meet

and confer and file a joint proposed schedule for limited jurisdictional discovery, *see id*. at 22;

Order [Dkt. 53] at 1-2, but they did not do so due to Plaintiff's motion for partial reconsideration.

They will again be ordered to submit such a schedule.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for reconsideration or to amend

[Dkt. 57] will be denied. The parties will be required to meet and confer and file a joint

proposed schedule for limited jurisdictional discovery regarding Ms. Colbert's sole remaining

federal claim—the Fifth Amendment substantive due process claim against the District of

Columbia based on the theories of special relationship and deliberate indifference. Limited

discovery will be permitted to determine whether K.C. was voluntarily or involuntarily

committed to the custody of the District of Columbia in 2010-2011 and to determine whether a

D.C. custom or policy was the moving force behind the alleged substantive due process

violation. A memorializing Order accompanies this Opinion.

Date: June 25, 2015                                          _____/s/_____
                                                             ROSEMARY M. COLLYER
                                                             United States District Judge